**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PAUL E. RAY, | No. C 12-0032 CRB (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;** |
| v. | |
| A. HEDGPETH, Warden, et al., | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

## INTRODUCTION

Plaintiff claims that prison medical staff provided him with constitutionally inadequate medical care. For the reasons stated herein, defendants' motion for summary judgment is GRANTED in favor of all defendants as to all claims. Plaintiff's motion for summary judgment is DENIED.

## BACKGROUND

The following factual allegations, unless specifically noted as being offered by only one party, are not disputed.

## I.     Dr. Pompan

On December 19, 2009, plaintiff, then imprisoned at Salinas Valley State Prison, was kicked in his right arm while playing football with other inmates. He was soon examined by an emergency room physician, who ordered an urgent MRI of plaintiff's arm and referred him to an orthopedic specialist.

On January 14, 2010, defendant Dr. Pompan, a board certified orthopedic surgeon, first examined plaintiff regarding the injury. He believed that plaintiff had injured his biceps muscle and may have partially torn the biceps tendon. The injury was unusual because such tendon ruptures are caused by heavy lifting, rather than blunt force, such as a kick. Defendants assert that Pompan felt surgery was not warranted because of the nature of injury, and because the injury was "chronic," being close to a month old. In order to evaluate plaintiff's treatment options, Pompan recommended that he receive an urgent MRI which would reveal whether the injury was a partial or complete tear.

On February 17, 2010, plaintiff underwent an MRI examination, which showed a muscle injury and some tearing of the distal biceps tendon fibers. A follow-up appointment with Pompan was scheduled for March 9, but plaintiff failed to attend.

Pompan reviewed the MRI. He noted in plaintiff's chart that surgery was one possible treatment, but that many patients do well under a more conservative, nonsurgical treatment. Surgery was disfavored in plaintiff's case because such treatment would be difficult on an injury as old as plaintiff's. Pompan recommended that plaintiff be examined by an upper extremity specialist if he would like to be considered for surgery to repair the chronic partial tear. The referral to a specialist was approved by the prison, but UC Davis and UC San Francisco declined to see plaintiff.

On May 7, 2010, plaintiff met with Dr. Pompan to discuss his treatment options. Upon examination of plaintiff, Pompan saw that the tear of the biceps tendon was a partial one, as the tendon was intact. He told plaintiff that surgery was not needed. Plaintiff, however, insisted that he wanted to be considered for surgery. Pompan explained that

plaintiff's injury was outside his area of his expertise, and recommended that plaintiff see an upper extremity expert, and requested a referral on plaintiff's behalf. He recommended that plaintiff use a muscle rub to the biceps, and continue strengthening his arm through exercise.

While waiting to be seen by a specialist, plaintiff underwent electromyography and nerve conduction velocity testing. The tests showed that he has mild to moderate nerve damage in both arms. Such nerve damage, according to defendants, is not associated with the partial biceps rupture and may be, rather than the kick to the arm, the cause of his plaintiff's pain. Plaintiff was offered various pain medications for his arm, but he refused to take them.

On March 9, 2011, plaintiff saw an UC Davis upper extremity specialist, who noted that surgery on the arm was unlikely to yield a good outcome. On September 13, 2011, Pompan met with plaintiff and repeated the recommendation that plaintiff be seen by an upper extremity specialist. Because he is a contract specialty-care consultant for the CDCR, Pompan could only recommend a referral. He hadn't the authority or power to refer plaintiff to an upper extremity specialist.

On June 14, 2012, an orthopedic surgeon at San Joaquin General Hospital examined plaintiff. He noted that plaintiff had good muscle strength and virtually full range of motion. The arm, he observed, showed substantial healing subsequent to a partial biceps muscle tendon rupture. In a follow-up visit, the expert concluded that no treatment was warranted.

Plaintiff claims that these facts show that Pompan was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. More specifically, according to plaintiff, Pompan (1) failed to "schedule an appointment and perform a surgical procedure to repair or reconstruct [plaintiff's] bicep tendon within the prescribed window that he prescribed" (MSJ, Jeffery Decl., Ex. A, Pl.'s Dep. 61:25–62:3), and (2) delayed treatment by recommending that he be examined by an upper extremities specialist.

## II. Dr. Sepulveda

Plaintiff claims that Dr. Sepulveda violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. At Salinas Valley, Dr. Sepulveda reviewed medical services requests and second-level appeals. In January 2011, more than a year after plaintiff was injured, Dr. Sepulveda reviewed plaintiff's second-level appeal requesting surgery because an operation, according to plaintiff, was necessary. Sepulveda denied the appeal after reviewing plaintiff's medical file and the medical literature concerning distal biceps tendon ruptures. He concluded that nonsurgical treatment was preferred for plaintiff's injury. Surgery, according to Sepulveda, was unnecessary, and would have needlessly exposed plaintiff to other health risks perhaps further injury to his arm. Also, by the time plaintiff's second-level appeal was reviewed, the injury was more than one year old and well into the chronic stage, where the likelihood of a positive outcome was low and the risk of complications high.

## III. Defendants' Evidence

Defendants have presented evidence regarding biceps muscle and biceps tendon injuries. According to this evidence, biceps muscle injuries are "best treated with pain relief and gentle range of motion exercises, followed by gradual strengthening," and are not treated with surgery. (MSJ at 2.)

A distal biceps tendon rupture is a relatively common injury which occurs mainly in middle-aged men during heavy work or lifting. "Partial ruptures are initially managed conservatively, that is without surgery." "Most patients with partial distal biceps tears do well and achieve good results without surgery." (Id. at 2–3) Such patients often regain full range of motion, though they will experience some weakness, often losing up to 10% of pre-injury elbow flexion and some forearm strength in turning motions. (Id. at 3.)

Surgery is considered only when nonsurgical options have failed. (Id. at 2.) The American College of Occupational and Environmental Medicine's guidelines conclude that "Conservative treatment of partial tendon ruptures generally has a good outcome. Surgical

reattachment of a partially ruptured tendon to bone has a poorer success rate." (MSJ at 3.) If treatment is delayed, the likelihood that surgery will help decreases substantially. (Id.)

When surgery is considered, it is usually reserved for patients under 40 years of age who need full arm strength (for work) or who have persistent pain. Such an operation is best done when the injury is acute, that is, within the first few weeks of injury. However, surgery improves the condition only moderately, and patients have a high risk that post-operative stiffness will greatly impair, rather than improve, function. Surgery may also cause nerve damage and continued pain. (Id.)

In sum, three physicians have provided evidence by way of declarations that general medical opinion disfavors surgical treatment for injuries such as plaintiff's. (MSJ, Barnett Decl. ¶ 5, 11; Pompan Decl. ¶ 17–21; Sepulveda Decl. ¶ 7–10.) "There is no need *to consider* surgical repair unless the patient is younger than 40 years and needs the full strength in flexion as a heavy laborer." (Id., Barnett Decl. ¶ 5) (emphasis added). Furthermore, "functional improvement after surgery is often modest." (Id.)

## IV.   Plaintiff's Evidence

Plaintiff asserts that Pompan showed deliberate indifference to his serious medical needs by failing to perform surgery, or by failing to arrange to have surgery performed within a short time after the injury. He bases this assertion on (1) his unsupported belief that he required surgery, and (2) Pompan's note that "surgery is possible for primary repair, but may be more difficult with time." (Pl's. Opp. to MSJ, Ex. C.) Plaintiff fails to mention that Pompan wrote the following immediately after the previous sentence appeared: "some patients do well with conservative management[;] some patients who undergo surgery become stiff, and may have problems if . . . therapy is not available." (Id.)

**DISCUSSION**

**I.      Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c).  The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323 (internal quotations omitted).

## II. Claims

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical needs and the nature of the defendant's response to those needs. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994) (equating standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." Id. Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. See McGuckin, 974 F.2d at 1060.

In order to prevail on a claim of deliberate indifference to medical needs, a plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on this course in "conscious disregard of an excessive risk to [plaintiff's] health." See Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. Id.; Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### A. Dr. Pompan

Defendant Pompan is entitled to summary judgment as a matter of law. The undisputed record shows that Pompan provided plaintiff with appropriate and reasonably timely medical treatment. More specifically, Dr. Pompan met with and examined plaintiff,

ordered an MRI, considered various treatment options, and recommended consultation with specialists. Rather than showing deliberate indifference, the record of these actions shows that Pompan was aware of plaintiff's condition, considered treatment options (including surgery), and took reasonable steps to treat plaintiff's injury. Such evidence shows nothing close deliberate indifference.

That Pompan did not act as plaintiff desired, especially in arranging for plaintiff to see a specialist or receive surgery, is not sufficient to demonstrate deliberate indifference. As to the first, the matter was largely beyond Pompan's control. As noted above, he could only recommend that plaintiff see a specialist — he had no power to order such action. Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002) (a delay in treatment that is not within the doctor's control does not constitute deliberate indifference).

As to the second, viz., refusing to treat plaintiff with surgery, the undisputed record shows that Pompan considered and rejected surgical treatment. This same record shows that medical opinion largely disfavors surgical treatment, and that even when surgery is (rarely) performed, it is likely to give little to no relief.

In no way, then, has plaintiff shown a genuine issue of material fact the physician's treatment was "medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." Toguchi, 391 F.3d at 1058. Defendants, however, have presented evidence that surgery is rarely a good treatment for anyone, that nonsurgical treatment is favored, and that when surgery is considered, it is reserved for persons who are under 40 and who need full arm strength for work. Also, plaintiff has not shown that surgery would have been more successful than the treatment offered. Specialists other than Pompan found plaintiff's condition to be properly treated without surgery. In sum, plaintiff has failed to set forth specific facts showing that there is a genuine dispute for trial. Accordingly, the motion for summary judgment in favor of defendant Pompan as to all claims is GRANTED.

### B. Dr. Sepulveda

Plaintiff claims that Sepulveda was deliberately indifferent to his serious medical needs because they knew through plaintiff's inmate appeals that Pompan was providing constitutionally inadequate health care and failed to intervene. Defendant Sepulveda is entitled to summary judgment as a matter of law. As determined above, plaintiff has not shown a genuine dispute that Pompan violated his Eighth Amendment rights. His claims against Sepulveda, then, necessarily fail. Also, by the time Sepulveda reviewed plaintiff's grievance, it was far too late for surgery to have been any benefit. Accordingly, the motion for summary judgment in favor of Sepulveda as to all claims is GRANTED.

### CONCLUSION

Plaintiff having failed to show that there are triable issues of material fact as to any of his claims, defendants' motion for summary judgment (Docket No. 32) is GRANTED in favor of defendants Pompan and Sepulveda as to all claims. Plaintiff's motion for summary judgment (Docket No. 39) is DENIED. The Clerk shall enter judgment in favor of all defendants as to all claims, terminate Docket Nos. 32 and 39, and close the file.

**IT IS SO ORDERED**.

DATED: June 25, 2013

CHARLES R. BREYER
United States District Judge